IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA          :
                                  :     CRIMINAL ACTION
            v.                    :
                                  :     NO. 06-377-1
                                  :
CHARLES WHITE                     :


**SURRICK, J.**                                    **AUGUST 17, 2007**

### MEMORANDUM & ORDER

Presently before the Court are the Motion Of Defendant To Suppress Physical Evidence (Doc. No. 128), the Motion To Dismiss Indictment For Violation Of The Interstate Agreement On Detainer's Act (Doc. No. 131), and the Amended Motion To Dismiss Indictment For Violation Of The Interstate Agreement On Detainer's Act (Doc. No. 147), filed on behalf of Defendant Charles White.  For the following reasons, Defendant's Motions will be denied.

## I.      BACKGROUND

On July 26, 2006, the grand jury returned an indictment charging Defendant Charles White with conspiracy in violation of 18 U.S.C. § 371, bank fraud in violation of 18 U.S.C. § 1344, aggravated identity theft in violation of 18 U.S.C. § 1028A, and aiding and abetting under 18 U.S.C. § 2.  (Doc. No. 1.)

### A.      Motion to Suppress Physical Evidence

The Motion to Suppress Physical Evidence arises out of the events of September 19, 2005.  On that date, Defendant White was driving a 2005 silver Chrysler Pacifica, Pennsylvania license plate number GCK-2579, on Erie Avenue in Philadelphia.  (July 20, 2007 Hr'g Tr. at 7;

Doc. No. 138 at 16.)  Allen Smith, a co-defendant in this case was a passenger in White's car.

(Doc. No. 138 at 16; July 20, 2007 Hr'g Tr. at 11.)  Philadelphia Police Officers Thomas Farrell

and Joseph Rapone of the Highway Patrol Unit were on duty in the area of Erie Avenue.  (July

20, 2007 Hr'g Tr. at 5-6.)  Officer Rapone had a stolen vehicle digest, known as a "hot sheet,"

which listed license plates of cars that had been reported stolen in Philadelphia in the previous

five days.  (*Id.* at 6-7.)  Rapone noticed that the license number on Defendant's car was on the

list of stolen vehicles.  (*Id.* at 6, Ex. 1 ("Stolen Vehicle Digest").)  In addition, that particular

license number had four stars next to it signifying that it received the further notation "try and

locate".  (*id.* at 8, Ex. 1.)  In Rapone's experience, this typically indicated a rental car that had

not been returned.  (*Id.* at 8.)  Rapone consulted the NCIC computer which is connected to the

Department of Motor Vehicles and contains an up-to-date listing of stolen vehicles.  (*Id.* at 10.)

The NCIC computer also listed the car as stolen.  (*Id.*)

        At this point, Rapone and Farrell signaled for the vehicle to pull over on Victoria Street.

(*Id.*)  The officers approached the vehicle and told Defendant that they had pulled him over

because the vehicle had been reported as stolen.  *(Id.)*  Defendant produced a copy of the car

rental agreement, which showed that the car had been rented in Defendant's wife's name.  (*Id.* at

11.)  The paperwork indicated that the car was overdue, and upon questioning, Defendant

responded that he was planning to return it that day.  (*Id.* at 12.)  Officer Rapone then called the

car rental company and spoke with an agent in the theft department.  (*Id.*)  The car company

agent informed Rapone that "it was behind in payment[,] and it was stolen."  (*Id.* at 27.)  The

company agent further indicated that the company wanted to prosecute the case.  (*Id.* at 12, 27.)

Rapone and Farrell then placed Defendant under arrest and took him into custody, placing him in

the back of the police vehicle.  (*Id.* at 12-13, 21.)  They determined that there were no outstanding warrants for the passenger Allen Smith and they released him.  (*Id.*)

The officers then called for a tow truck to return to the car rental company and performed an inventory search of the vehicle.  (*Id.* at 13.)  The officers recovered a black portfolio under the right front passenger seat of the car.  (*Id.*)  Officer Rapone could not recall whether the portfolio was open or zippered closed when he found it but indicated that it was possible that it was closed.  (*Id.* at 25.)  Inside the portfolio, Rapone discovered photocopies of checks and what appeared to be fraudulent driver's licenses and fraudulent identifications.  (*Id.* at 26.)  After finding these documents, the officers then attempted, unsuccessfully, to find Allen Smith, whom they had earlier released.  (*Id.*)  Finally, the officers took Defendant White to the Northwest Detective Bureau and had the car returned to the rental car company.  (*Id.*)  Defendant seeks to suppress the evidence discovered in the portfolio that was recovered during the search of the car.

**B.     Motion to Dismiss Indictment**

In addition to his Motion to Suppress, Defendant White has filed a Motion to Dismiss Indictment for Violation of the Interstate Agreement on Detainer's Act (Doc. No. 131).  This Motion is based on the following set of undisputed facts.  In July 2006, when the grand jury returned an indictment charging Defendant with multiple federal offenses, Defendant was serving a state prison sentence that had begun on October 3, 2005 as a result of a conviction in Pennsylvania for fraudulent check activity.  (Doc. No. 131 at 1.)  On August 17, 2006, we issued an Order directing the Warden of SCI-Fayette and the United States Marshals for the Eastern District of Pennsylvania to produce White to be arraigned before Magistrate Judge Carol Wells on September 14, 2006.  (Doc. No. 30.)  At the arraignment on September 14, 2006 a temporary

3

detention of Defendant pending a hearing was ordered.  (Doc. No. 58.)  Thereafter, Defendant waived his right to a hearing and stipulated to pretrial detention.

On November 2, 2006, a pretrial conference was held in open court.  All counsel received notice of the conference.  At that conference, deadlines for discovery and pretrial motions were discussed.  The Government's Motion to declare this matter complex for purposes of the Speedy Trial Act was also discussed.  At the conclusion of the conference, the Motion was granted and counsel were advised that trial would likely be held in September 2007.  There were no objections from counsel.  (Nov. 2, 2007 Hr'g Tr. at 9-11.)  On November 6, 2006, we issued the Order declaring the case complex and granting a continuance beyond the time limits established by the Speedy Trial Act.  We also issued a Scheduling Order.  (Doc. Nos. 77 & 78.)  On April 12, 2007, the deadline for pretrial submissions was extended to May 9, 2007.  (Doc. No. 86.)  On May 25, 2007, Defendant White filed a Motion for Extension of Time to File Pretrial Motions (Doc. No. 115), in which he made the following statement:  "[D]efense counsel deliberately bypassed the May 9, 2007 filing date for pretrial motions because the defendant had previously given every sign of accepting responsibility for his offenses obviating the need for a trial.  The defendant has now done an about face.  He has decided that he wishes to contest the charges in this case and to demand a trial."  (*Id.* at 2.)  Defendant's Motion for Extension was granted allowing White to file pretrial motions on or before June 11, 2007.  (Doc. No. 117.)  On June 20, 2007, Defendant filed late pretrial motions.  We accepted the motions.  (Doc. No. 143.)  Among the numerous motions filed on June 20, 2007, was the Motion to Dismiss Indictment for Violation of the Interstate Agreement on Detainer's Act (Doc. No. 131).

**II.    LEGAL ANALYSIS**

A.      **Motion To Suppress Physical Evidence**

In his Motion to Suppress Physical Evidence, Defendant makes two arguments.  First, Defendant contends that there was no probable cause for his arrest and that the subsequent search of the car was unlawful and the fruits of that search should be suppressed.  (Doc. No. 128 at 2.)  Second, Defendant contends that even if there was probable cause for his arrest, the search should not have included a search of the contents of the closed container found in the car.  *(Id.* at 3.)  Defendant contends that it was unlawful for the police to search inside the portfolio.  (*Id.*)

1.      *Probable Cause to Arrest and Subsequent Search*

The Supreme Court has made it clear that "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  The existence of probable cause should be determined based upon "the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  *Id.* (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).  "[T]he probable-cause standard is a 'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"  *Pringle*, 540 U.S. at 370 (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983) and citing *Ornelas v. United States*, 517 U.S. 690, 695 (1996); *United States v. Sokolow*, 490 U.S. 1, 7-8 (1989)).  Moreover, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."  *Id.* at 370-71 (quoting *Gates*, 462 U.S. at 232).

In this case, it is clear that probable cause existed.  The license number on Defendant's

5

car appeared on the list of vehicles that had been reported stolen in Philadelphia in the last five

days.  The license number also appeared on the computer database that contains an updated list

of stolen cars.  When Defendant was questioned about this, he produced paperwork from the car

rental company that indicated that the car was rented in Defendant's wife's name, and that the

return of the car was overdue.  The police took the additional step of calling the car rental

company, an agent of which confirmed that he had reported the car stolen and wanted to

prosecute.[1]  Based on this information, officers arrested Defendant and placed him in custody.

There is no doubt that under all of the circumstances and, more specifically, after three separate

checks produced information that Defendant's car had indeed been reported stolen, the officers

had reasonable grounds for a belief of guilt.  Moreover, the car rental company wanted to

prosecute.  *See Pringle*, 540 U.S. at 370-71 ("[T]he substance of all the definitions of probable

cause is a reasonable ground for belief of guilt.").  Accordingly, we are compelled to conclude

that there was probable cause to arrest Defendant.

       Having concluded that there was probable cause to arrest, we also conclude that the

---

[1]  We note that defense counsel contended during arguments at the Suppression Hearing that the officer testified only that the car rental agent had told him that the car was overdue for return and not that it was stolen.  (Hr'g Tr. at 28, 33.)  However, a review of the transcript of Officer Rapone's testimony demonstrates that defense counsel was not correct.  Officer Rapone testified as follows:

Q: Officer, when you spoke to the representative from the Dollar Rent-A-Car did he just tell you that the car was a little late or had he told you that it was stolen?

A: He's saying that it was behind in payment and it was stolen that's why they put it into try to locate because it's hired and not returned.  And they could not located *[sic]* that vehicle it was not being brought back to their headquarters.

(Hr'g Tr. at 27.)  We have no reason to question the truth of Officer Rapone's statements.

search of the vehicle was proper as a search incident to arrest.  The Supreme Court has addressed

this exact scenario.  In *New York v. Belton*, 453 U.S. 454 (1981), the Court stated:  "[W]e hold

that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he

may, as a contemporaneous incident of that arrest, search the passenger compartment of that

automobile."  *Id.* at 460.  The Court reached this conclusion based upon prior cases which

instructed that upon making a lawful arrest, officers may conduct a search incident to the arrest

of the area within the immediate control of the arrestee.  *See Chimel v. California*, 395 U.S. 752,

762-63 (1969) ("When an arrest is made . . . it is entirely reasonable for the arresting officer to

search for and seize any evidence on the arrestee's person in order to prevent its concealment or

destruction.  And the area into which an arrestee might reach in order to grab a weapon or

evidentiary items must, of course, be governed by a like rule.").  The *Belton* Court concluded

that "articles inside the relatively narrow compass of the passenger compartment of an

automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee

might reach in order to grab a weapon or evidentiary ite[m].'"  *Belton*, 453 U.S. at 460 (quoting

*Chimel*, 395 U.S. at 763).  The Third Circuit has interpreted the holding in *Belton* to mean that

there need not be any nexus between the item seized and the criminal behavior at issue.  Rather,

"such a search is permissible whenever it is made in conjunction with and contemporaneous to a

lawful arrest of the auto's occupants" even when the arrestees are no longer in the vehicle when

the search takes place.  *United States v. Schecter*, 717 F.2d 864, 868 (3d Cir. 1983).

It is clear that under *Belton* and *Schecter*, the search here was lawful and proper.  After

properly concluding that they had probable cause to arrest, the officers removed Defendant from

the car and placed him in custody in the back of the police vehicle.  Immediately thereafter, they

undertook a search of the passenger compartment of the vehicle as a proper search incident to arrest.  The officers recovered the portfolio and its contents from inside the passenger compartment of the car.  We are compelled to conclude that this search, which was contemporaneous to a lawful arrest, was proper.[2]

### 2.     *Search of the Portfolio*

Defendant contends that even if we find the arrest to be based on probable cause, we should still suppress the contents of the portfolio because the officers were not permitted to search inside a closed container.  We disagree.  The Court in *Belton* addressed this exact situation concluding that "the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach."  *Belton*, 453 U.S. at 460.  In addition, the Court held:  "Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have."[3]  *Id.* at 461.  In a footnote further clarifying its holding, the Court noted that the term "'[c]ontainer' here denotes any object capable of holding another object.  It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the

---

[2] We note that the search was also proper as an inventory search.  *See Florida v. Wells*, 495 U.S. 1, 4-5 (1990); *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976).

[3] In addition, the Court clarified that police officers do not need to provide specific justification for searching such a container even if it is clear that it could hold "neither a weapon nor evidence of the criminal conduct for which the suspect was arrested."  *Belton*, 453 U.S. at 461.

8

passenger compartment, as well as luggage, boxes, bags, clothing, and the like."[4]  *Id.* at 460 n.4.

The portfolio at issue in this case was recovered from under the right front passenger seat inside

the passenger compartment of the vehicle.  While the officer cannot recall if the portfolio was

open or closed, *Belton* instructs that even if it was closed, the officers could lawfully open it to

search its contents.  As a result, we conclude that the search of the car and of the contents of the

portfolio were lawful searches incident to a lawful arrest.  Accordingly, we will deny

Defendant's Motion to Suppress.

> **B.    Motion to Dismiss Indictment for Violation of the Interstate Agreement on**
> **Detainer's Act**

In the Motion to Dismiss Indictment and the Amended Motion to Dismiss Indictment,

Defendant contends that the Court should dismiss the indictment because Defendant was not

brought to trial within the deadline provided for in the Interstate Agreement on Detainer's Act

("IAD" or "the Act").  18 U.S.C. app. § 2.  The IAD addresses situations in which charges are

filed against a defendant who is already incarcerated in another jurisdiction.  The purpose of the

Act is to "encourage the expeditious and orderly disposition of such charges and determination

of the proper status of any and all detainers based on untried indictments, informations, or

complaints."  18 U.S.C. app. § 2, Art. I.  In their submissions, Defendant and the Government

primarily focus on the provisions of Article III of the Act, which provides:

> Whenever a person has entered upon a term of imprisonment in a penal or
> correctional institution of a party State, and whenever during the continuance of

---

[4]  The *Belton* Court further noted that its holding "encompasses only the interior of the passenger compartment of an automobile and does not encompass the trunk."  453 U.S. at 460 n.4.  The officers in the instant case recovered the portfolio at issue from inside the passenger compartment and not the trunk.

the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered* to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and *his request for a final disposition* to be made of the indictment, information, or complaint: *Provided*, that, for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

*Id.*, Art. III(a) (emphasis added). These provisions do not apply to Defendant because he did not invoke the Act's protection by delivering written notice of his place of imprisonment and his request for a final disposition. (July 20, 2007 Hr'g Tr. at 55 (defense counsel concluded that Defendant did not make any requests with regard to the IAD.))

Nevertheless, as Defendant pointed out during the hearing, Article IV of the Act contains a different deadline for trial and does not require the Defendant to have made any formal requests for the deadline period to be activated. (July 20, 2007 Hr'g Tr. at 50.) Article IV provides:

(a) The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated . . . . . .

(c) In respect of any proceeding made possible by this article, *trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State*, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

*Id.*, Art. IV(a), (c) (emphasis added).

In this case, Defendant was in state custody when the grand jury returned an indictment

charging him with several federal offenses. After the issuance of a bench warrant, we issued an Order directing the Warden of SCI-Fayette and the United States Marshals for the Eastern District of Pennsylvania to produce White on September 14, 2006 to appear for arraignment. (Doc. No. 30.) Since that time, Defendant has been held in temporary federal custody pending resolution of the federal charges. (Doc. Nos. 58 & 60.) Defendant contends that based upon the IAD's 120-day deadline, he should have been brought to trial by January 12, 2007.[5]

During the time period between September 2006 and January 2007, a number of events occurred in this case. On October 26, 2006, we issued an Order notifying counsel of a pretrial conference. (Doc. No. 75.) On November 2, 2006, we conducted that conference in open court and discussed numerous pretrial discovery and scheduling issues. We also discussed the declaration of the case as complex and the continuance of the case beyond the time limits established by the Speedy Trial Act.[6] Deadlines for pretrial submissions were set and the court advised that trial would likely occur in September 2007. (Nov. 2, 2006 Hr'g Tr. at 9-11; Doc. No. 76.) The Government and all defense counsel, with the exception of Defendant White's attorney, appeared for that hearing. (Nov. 2, 2006 Hr'g Tr. at 3.) There were no objections to the declaration of the case as complex and to its continuance beyond the Speedy Trial Act time limits. In fact, even after the Court issued an Order on November 6, 2006, declaring the case

---

[5] This date is 120 days after Defendant's arrival in federal custody on September 14, 2006.

[6] This case involves ten defendants and twenty-two counts charging conspiracy to commit bank fraud, bank fraud, and aggravated identity theft. The indictment describes seventy-five different transactions, involving four different banks, with seventeen different victims. Discovery included thousands of documents, recorded telephone conversations and items seized as a result of searches.

11

complex, Defendant raised no objection to the Order, filed no motion for reconsideration, and never mentioned the IAD deadline or Defendant's desire to be tried within the 120-day time period to the Court despite the discussion in open court that the likely trial date would be in September 2007, a date that is clearly months after the 120-day time period had concluded.[7] Furthermore, it is clear from Defendant's Motion for Extension of Time to File Pretrial Motions (Doc. No. 115), filed on May 25, 2007, that during the entire period leading up to that Motion, defense counsel had been of the belief that his client intended to plead guilty, in which case, no trial would be necessary at all.

Under these circumstances, we are compelled to deny Defendant's motion to dismiss the indictment.  Not only did Defendant fail to raise the IAD issue at any time during the 120-day time period, he did not raise the issue for five months after the conclusion of that time period.  In addition, Defendant's counsel failed to appear at the hearing at which the Court specifically, and for good cause, granted a reasonable continuance of the matter.  *See* 18 U.S.C. app. § 2, Art. IV(c) ("[B]ut for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."). Defendant did not object to the Order declaring the case complex nor did he object to the Scheduling Order in which we set deadlines for pretrial submissions that were themselves beyond the 120-day period.  Accordingly, we will deny Defendant's Motion to Dismiss Indictment and the Amended Motion to Dismiss Indictment.  *See Reed v. Farley*, 512 U.S. 339, 349, 354 (1994) (holding that court's failure to observe the 120-day speedy trial rule of the IAD

---

[7] A copy of the November 6, 2006 Order was faxed to Defendant White's counsel on November 6, 2007.

is not grounds for federal habeas relief when defendant avoided clear objection until the clock

had run and suffered no prejudice attributable to delayed commencement).[8]

      An appropriate Order follows.

---

[8] We reject Defendant's testimony that he suffered prejudice attributable to delay. Moreover, discovery in this matter was so voluminous that if Defendant had told his attorney that he wanted to go to trial, counsel would have had great difficulty preparing this case for trial by January 2007.  This is undoubtedly why the nine attorneys who appeared at the November 2, 2006 conference representing the other defendants did not object to the Orders entered on November 6, 2006 declaring this case complex, and scheduling pretrial motions for May of 2007.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA          :
                                  :          CRIMINAL ACTION
            v.                    :
                                  :          NO. 06-377-1
                                  :
CHARLES WHITE                     :


## **ORDER**

AND NOW, this <u>17th</u> day of August, 2007, upon consideration of the Motion Of Defendant To Suppress Physical Evidence (Doc. No. 128), the Motion To Dismiss Indictment For Violation Of The Interstate Agreement On Detainer's Act (Doc. No. 131), the Amended Motion To Dismiss Indictment For Violation Of The Interstate Agreement On Detainer's Act (Doc. No. 147), filed on behalf of Defendant Charles White, and all papers submitted in support thereof and in opposition thereto, it is ORDERED that the Motions are DENIED.

IT IS SO ORDERED.


BY THE COURT:


<u>/s/ R. Barclay Surrick</u>
U.S. District Court Judge